
**ORIGINAL**

FILED IN OPEN COURT
U.S.D.C. Atlanta
AUG 6 2014
James N. Hatten, Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>OSCAR JAMESON STOKES, M.D. | Criminal Indictment<br><br>No. 1:14CR290<br><br>**UNDER SEAL** |

THE GRAND JURY CHARGES THAT:

## INTRODUCTION

At all times relevant to this Indictment:

**1.** The Controlled Substances Act governed the manufacture, distribution, and dispensing of controlled substances in the United States. The Controlled Substances Act defines a "controlled substance" as a drug or other substance that was included within one of five "schedules" - Schedule I, II, III, IV, or V - of Subchapter I, Part B of the Act. 21 U.S.C. § 802(6).

**2.** Various prescription drugs are defined as controlled substances under the Act. Drugs are placed into these schedules based on their potential for abuse, among other things. Schedule I drugs have a high potential for abuse, have no currently accepted medical use, and lack accepted safe use. 21 U.S.C. § 812(b)(1). Schedule II drugs have a currently accepted medical use with severe restrictions and have a high potential for abuse that can lead to severe psychological or

physical dependence. 21 U.S.C. § 812(b)(2). Schedule III drugs have a currently accepted medical use and have a high potential for abuse, less than the drugs listed in Schedule II. 21 U.S.C. § 812(b)(3). Schedule IV drugs have a currently accepted medical use and have a low potential for abuse relative to the drugs in Schedule III. 21 U.S.C. § 812(b)(4).

3. Oxycodone, an opiate, is a Schedule II controlled substance. 21 C.F.R. § 1308.12(b)(1). Oxycodone is sold generically, and the brand names Oxycontin and Roxicodone are prescription drugs that contain Oxycodone. Oxymorphone, an opioid pain medication, is a Schedule II controlled substance. 21 C.F.R. § 1308.12(b)(1). Oxymorphone is sold generically, or under the brand name Opana. Hydromorphone, an opioid pain medication, is a Schedule II controlled substance. 21 C.F.R. § 1308.12(b)(1). Hydromorphone is sold generically or under the brand name Dilaudid. Morphine Sulfate, a painkiller, is a Schedule II controlled substance. 21 C.F.R. § 1308.12(b)(1). Morphine is sold generically or under the brand name MS Contin.

4. Title 21, United States Code, Section 822(b), and Title 21, Code of Federal Regulations, Section 290.1, provide that the controlled substances listed in Schedules II, III, and IV can be dispensed or distributed only by prescriptions by a licensed practitioner. The Drug Enforcement Administration (DEA), as authorized by the Act, issues registration numbers to qualifying doctors and pharmacists that allow them to issue prescriptions or dispense Schedule II, III, and IV controlled substances. Accordingly, the controlled substances described

2

above can be dispensed only pursuant to a valid prescription from a physician authorized by the DEA to distribute controlled substances. 21 C.F.R. § 1306.03.

5. Title 21, Code of Federal Regulations, Section 1306.04, provides that in order for a prescription for a controlled substance to be valid, it "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." This section further provides that:

> The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner . . . . An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. § 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

21 C.F.R. § 1306.04.

6. An order purporting to be a prescription that was issued outside the usual course of professional treatment is not a prescription within the meaning of the Controlled Substances Act, and the person who issues the prescription violates section 841(a)(1) of Title 21 of the United States Code.

7. INNOVATIVE PAIN MANAGEMENT CLINIC (hereinafter referred to collectively as the "Clinic") is an ostensible pain clinic operating in the Greater Atlanta, Georgia-area.

3

8. OSCAR JAMESON STOKES, M.D. is a doctor at the Clinic. STOKES is registered with the DEA under the provisions of the Controlled Substances Act as a practitioner and is assigned a DEA registration number that authorized him to write prescriptions for Schedule II, III, IV, and V controlled substances.

## Count One

9. The allegations contained in paragraphs 1 through 8 are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

10. Beginning in or about March 2013 and continuing to the present, in the Northern District of Georgia, and elsewhere, the defendant, OSCAR JAMESON STOKES, M.D., did knowingly combine, conspire, confederate, agree, and have a tacit understanding with others known and unknown to the Grand Jury, to knowingly and intentionally distribute and dispense, outside the usual course of professional medical practice and for no legitimate medical purpose, mixtures and substances containing detectable amounts of various controlled substances, including, but not limited to, Oxycodone (Schedule II), Hydromorphone (Schedule II), and Oxymorphone (Schedule II), in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C) and (b)(2).

## Purposes, Ways, Manner and Means of the Conspiracy

11. The purposes of the conspiracy included, but were not limited to, the following:

4

**12.** To prescribe as many Oxycodone, Hydromorphone, and Oxymorphone pills, among other drugs, as possible, irrespective of legitimate medical purpose for prescribing them, to generate profits. To accomplish this purpose, the defendant, OSCAR JAMESON STOKES, M.D., with the knowing involvement and participation of those known and unknown to the Grand Jury, would prescribe excessive amounts of Oxycodone, Hydromorphone, and Oxymorphone, for other than a legitimate medical purpose and not in the usual course of professional treatment, thus causing, aiding, abetting, and facilitating the misuse, abuse, and further distribution of the controlled substances.

**13.** It was part of the conspiracy that OSCAR JAMESON STOKES, M.D. would prescribe Schedule II controlled substances at a patient's first appointment without conducting a thorough medical examination, which did not result in a legitimate diagnosis justifying the prescriptions of the controlled substances. Further, STOKES, prescribed these drugs in inappropriate amounts and dosage combinations that exceeded that required for legitimate medical treatment and aroused suspicion from pharmacists. At follow-up visits, STOKES, wrote additional prescriptions with no further medical evaluation whatsoever.

**14.** The defendant, OSCAR JAMESON STOKES, M.D., continued prescribing controlled substances even after learning that patients were diverting their prescriptions, ignoring obvious indications of misuse. The Clinic serviced an inordinate amount of people on a daily basis, most having traveled from out-of-

state. STOKES typically saw patients that paid in cash every three weeks, while he saw patients that used insurance every four weeks.

### Count Two

15. The allegations contained in paragraphs 1 through 8, and 11 through 14, are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

16. Beginning on a date unknown and continuing until on or about August 5, 2014, within the Northern District of Georgia, the defendant, OSCAR JAMESON STOKES, M.D., did knowingly and intentionally open, lease, rent, use and maintain a place, namely a business location operating as "INNOVATIVE PAIN MANAGEMENT CLINIC," located at 1300 Upper Hembree Road, Building 100, Suite B, Roswell (Fulton County), Georgia, for the purpose of distributing Schedule II controlled substances, outside the course of professional medical practice and for other than a legitimate medical purpose, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and 841(b)(2), all in violation of Title 21, United States Code, Section 856(a)(1).

### Counts Three through Ten

17. The allegations contained in paragraphs 1 through 8 are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

18. Between and including the dates of March 28, 2013 and August 4, 2014, in the Northern District of Georgia, the defendant, OSCAR JAMESON STOKES,

M.D., a physician authorized to prescribe controlled substances, did knowingly and intentionally distribute quantities of Schedule II controlled substances, by prescribing to C.F. the mixtures and substances described and designated in the table below, outside the scope of professional practice and not for a legitimate medical purpose:

| Count | Patient | Date | Rx Prescribed |
|---|---|---|---|
| Three | C.F. | March 28, 2013 | 120 Roxicodone 30mg |
| Four | C.F. | May 2, 2013 | 120 Roxicodone 30mg |
| Five | C.F. | April 15, 2014 | 63 Oxycodone 30mg |
| Six | C.F. | May 6, 2014 | 63 Oxycodone 30mg |
| Seven | C.F. | May 27, 2014 | 63 Oxycodone 30mg |
| Eight | C.F. | June 17, 2014 | 63 Oxycodone 30mg |
| Nine | C.F. | July 8, 2014 | 63 Oxycodone 30mg |
| Ten | C.F. | August 4, 2014 | 105 Oxycodone 30mg |

all in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

### Counts Eleven through Fourteen

19. The allegations contained in paragraphs 1 through 8 are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

20. Between and including the dates of May 20, 2014 and August 4, 2014, in the Northern District of Georgia, the defendant, OSCAR JAMESON STOKES, M.D., a physician authorized to prescribe controlled substances, did knowingly and intentionally distribute quantities of Schedule II controlled substances, by prescribing to J.R. the mixtures and substances described and designated in the

table below, outside the scope of professional practice and not for a legitimate medical purpose below:

| Count | Patient | Date | Rx Prescribed |
|---|---|---|---|
| Eleven | J.R. | May 20, 2014 | 105 Dilaudid 8mg<br>42 MS Contin 30mg |
| Twelve | J.R. | June 12, 2014 | 105 Dilaudid 8mg<br>42 MS Contin 30mg |
| Thirteen | J.R. | July 10, 2014 | 105 Dilaudid 8mg<br>42 MS Contin 30mg |
| Fourteen | J.R. | August 4, 2014 | 105 Oxycodone 30mg<br>42 MS Contin 30mg |

all in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

**Count Fifteen**

21. The allegations contained in paragraphs 1 through 8 are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

22. On or about May 6, 2014, in the Northern District of Georgia, the defendant, OSCAR JAMESON STOKES, M.D., a physician authorized to prescribe controlled substances, did knowingly and intentionally distribute quantities of Schedule II controlled substances, by prescribing outside the scope of professional practice and not for a legitimate medical purpose, the mixtures and substances described and designated below:

| Patient | Date | Rx Prescribed |
|---|---|---|
| S.M. | May 6, 2014 | 105 Oxycodone 15mg |

all in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

## Count Sixteen

**23.** The allegations contained in paragraphs 1 through 8 are hereby repeated, realleged, and incorporated by reference as if fully set forth herein.

**24.** On or about May 20, 2014, in the Northern District of Georgia, the defendant, OSCAR JAMESON STOKES, M.D., a physician authorized to prescribe controlled substances, did knowingly and intentionally distribute quantities of Schedule II controlled substances, by prescribing outside the scope of professional practice and not for a legitimate medical purpose, the mixtures and substances described and designated below:

| Patient | Date | Rx Prescribed |
| --- | --- | --- |
| B.B. | May 20, 2014 | 42 Opana ER 20mg<br>63 Dilaudid 8mg |

all in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

## Forfeiture Provision

1. Upon conviction of any of the controlled substance offenses alleged in Counts One through Sixteen of this Indictment, the defendant, OSCAR JAMESON STOKES, M.D., shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a), all property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the said violations and all property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of the said violations, including, but not limited to, the following:

a. MONEY JUDGMENT: A sum of money in United States currency equal to the amount of proceeds the defendants obtained as a result of the offenses for which the defendant is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

b. REAL PROPERTY: 456 Woodliff Place, Alpharetta, Fulton County, Georgia, and all buildings and appurtenances thereon, more particularly described as:

> All that tract and or parcel of land lying and being in Land Lot 1108, 2nd District, 2nd Section, Fulton County, Georgia, and being shown as Lot 25, Phase II, Vickery Crest (f/k/a Vickery Summit)(f/k/a Donegal), as recorded in Plat Book 361, Pages 28-32, Fulton County, Georgia records. Said Plat is incorporated herein and made a part hereof by reference.
> This being the same property erroneously referred to as being in Land Lot 1053 in that certain limited Warranty Deed at Deed Book 52119, Page 441. [Parcel Number 22-479011081411].

If, as a result of any act or omission of the defendant, any property subject to forfeiture:

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p) and Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property or seek a money judgment against said defendant for any amount that would constitute the proceeds of such violation.

A _____*True*_____ BILL

_____
FOREPERSON

SALLY QUILLIAN YATES
 *United States Attorney*

C. BROCK BROCKINGTON
 *Assistant United States Attorney*
Georgia Bar No. 775084

600 U.S. Courthouse
75 Spring Street SW
Atlanta, Georgia 30303
404-581-6000