IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL INDICTMENT |
| | : | |
| | : | No: 1:14-cr-290-TWT-GGB |
| v. | : | |
| | : | |
| OSCAR JAMESON STOKES | : | |
| | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE OBTAINED BY THE GOVERNMENT'S SOURCE
OF INFORMATION**

Comes now the United States of America, by and through its counsel, Sally
Quillian Yates, United States Attorney for the Northern District of Georgia, and
C. Brock Brockington, Assistant United States Attorney, and files this Response to
Defendant's Motion to Suppress Evidence Obtained by the Government's Source
of Information. The Government responds as follows:

**INTRODUCTION**

The defendant, Oscar Jameson Stokes, is charged in a sixteen count indictment,
returned by a Grand Jury sitting in the Northern District of Georgia on August 6,
2014, with a Conspiracy to Distribute Controlled Substances, namely Oxycodone,
as well as several substantive counts for Distribution of Oxycodone, all being
prescribed outside the scope of professional practice and not for a legitimate
medical purpose. (Doc. 1). Agents also arrested Stokes on August 6, 2014 and,

contemporaneously, executed two search warrants and a seizure warrant, for his residence and his business. On October 7, 2014, Stokes filed a motion to suppress evidence. (Doc. 30). The basis for his motion is that evidence gathered by an employee of Stokes working on behalf of the Government as a confidential informant should be suppressed because no search warrant was obtained. (*See* Doc 30, at 3). However, as outlined below, Stokes's right to be free from unlawful searches extends only to those items in which he possesses a legitimate expectation of privacy, and no such expectation was possessed where the conduct and information captured by the informant's camera was displayed in plain view in Stokes's clinic. Further, the search was consented to by the informant, so not warrant was required.

## FACTS

Over three days in July 2014, agents and officers with the Drug Enforcement Administration utilized a confidential source of information (CS) to gather evidence of illegal activity at Innovative Pain Management Clinic, the office run by Stokes. The CS was employed by Stokes and worked in the clinic. On July 25, July 26, and July 28, law enforcement met with the CS, and provided her with a covert audio/video recording device. The agents would then follow the CS and observe her enter the clinic to begin work. After she had finished working for the day, the CS would leave the clinic and meet with the agents to return the recording device. During the time that the CS assisted the Government, she made audio and video recordings of potentially criminal activity at the clinic.

2

## ARGUMENT AND AUTHORITY

No search warrant was required to utilize a confidential informant tasked with making surreptitious recordings of activity in the clinic displayed in plain view and as part of her employment for Stokes. This is because Stokes's Fourth Amendment rights were not violated by the CS conducting a search in the clinic where she was employed. It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). It is equally settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). The Government can rely on the consent exception by showing that either Stokes consented to the search, or that consent was obtained from a third party that had the ability to furnish valid consent, and said consent was voluntary. United States v. Jenkins, 46 F.3d 447, 451 (5th Cir. 1995).

**Authority to Consent**

The Government can justify a warrantless search by proof of voluntary consent without proof that consent was given by the defendant, if it can show that "permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171 (1974). "The authority which justifies the third-party consent does not rest upon the law of property, with

its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." Matlock, 415 U.S. at 171 n.7.

Third party employees have been deemed to have authority to consent on behalf of their defendant employers. Jenkins, 46 F.3d at 455 (informant/employee with routine access to his employer's videotapes searched those tapes and produced them to Government). See United States v. Goldin, 1996 WL 294366 at *16 (S.D. Ala. 1996) (company secretary produced to Government corporate documents she had access to as part of her employment responsibilities); see also United States v. Numisgroup, 137 F. Supp. 2d 139 (E.D.N.Y. 2001) (defendants did not possess legitimate expectation of privacy as to documents voluntarily given or openly displayed to their salesman, who was acting as undercover informant). Here, the CS is an employee in Stokes's clinic. As part of her duties, the CS had access to prescriptions, and was able to observe the operation of the clinic. Like the employees in the cases cited above, she had authority to consent to the search of the clinic.

**Voluntariness**

To determine voluntariness, the Eleventh Circuit has set forth several relevant factors, none of which is dispositive: (1) the voluntariness of the defendant's custodial status, (2) the presence of coercive police procedure, (3) the extent and

level of the defendant's cooperation with police, (4) the defendant's awareness of his right to refuse to consent to the search, (5) the defendant's education and intelligence, and, (6) the defendant's belief that no incriminating evidence will be found.  United States v. Chemaly, 741 F.2d 1346, 1352 (11th Cir. 1984).

In this case, the facts weigh in favor of a finding of voluntariness.  The CS was never in custody when she agreed to assist the DEA agents.  There were no coercive efforts undertaken by law enforcement; the CS was never a target of the investigation.  The CS, on three occasions, met with agents and was outfitted with a covert recording device that she used to capture audio and video recordings of suspected illegal prescribing of controlled substances.  Finally, the CS is competent enough to work at a doctor's office, demonstrating an intelligence level that could comprehend her decision to consent.   As the Jenkins court did with Mark Boyd, the confidential source/employee who provided incriminating evidence against his employer to law enforcement, this Court should conclude that the CS's consent was voluntary, even while only considering four of the six factors.  See Jenkins, 46 F.3d at 454 ("Even without evidence sufficient to reach a conclusion on the last two factors, consideration of the first four factors leads to a conclusion . . . that Boyd's consent was voluntary).  With this consent, the use of a confidential informant without a search warrant no longer implicates the Fourth Amendment, and Stokes's Motion to Suppress fails.

**Evidentiary Hearing**

"[A] trial court may refuse a defendant's request for a suppression hearing and motion to suppress if the defendant fails to allege facts that, if proved, would

require the grant of relief. United States v. Richardson, 764 F.2d 1514, 1526-27 (11th Cir. 1985). Here, there is no dispute regarding the facts. In his entire motion, Stokes cites to one case, support for the proposition that the CS was a government actor. (Doc. 30). He then concludes that because she was a government actor, "the Fourth Amendment was implicated and a search warrant was required for the searches conducted by the nurse." (Doc. 30, at 3). Stokes completely ignores the exceptions to the general rule outlawing warrantless searches, which, as explained above, permit the kind of search using a confidential informant that took place here. There is, therefore, no need to conduct an evidentiary hearing to elicit facts on which the parties already agree. Stokes cannot uncover any facts – nor has he cited any in his brief – that would warrant the suppression of evidence discovered through the use of a confidential informant. To hold otherwise could potentially lead to the undesirable result where the use of confidential sources is totally prohibited. Compare United States v. Schuster, 684 F.2d 744, 747 (11th Cir. 1982) (citing United States v. Lewis, 385 U.S. 206, 210 (1987) for proposition that rule finding Fourth Amendment violation in case where defendant unknowingly invited undercover agent into home could threaten the use of undercovers in any manner). "[I]t is beyond question that the government has the right to investigate possible illegal activity, and this investigative power encompasses the right to use confidential sources." Jenkins, 46 F.3d at 452.

Stokes ends his motion by contending that potential violations of law "further demonstrate that the searches conducted by the nurse were unreasonable under the Fourth Amendment and lack good faith on the part of the Government." (Doc. 30,

at 5). Stokes cites a state criminal statute and a federal criminal statute, but does not analyze whether the facts support violations of those laws, noting simply that "the nurse potentially committed felony offenses." (Doc. 30, at 3). Whether the CS's conduct while making recordings on behalf of the government rose to the level of a felony offense or not has no effect on (1) the issue of authority to consent and (2) the voluntariness of the consent, the two propositions that support the CS's consent to the search, a recognized exception to the warrant rule.

## Conclusion

Stokes's fourth amendment rights were not violated by the use of a government actor to conduct a search at his clinic because that actor had the authority to consent to the search. With this consent, the Government did not violate Stokes's Fourth Amendment rights because the search was not unreasonable. Given the foregoing, this Court should deny Stokes's Motion to Suppress, and his request for a hearing.

Respectfully Submitted,

SALLY QUILLIAN YATES
United States Attorney

*/s/ Brock Brockington*
C. BROCK BROCKINGTON
Assistant United States Attorney
Georgia Bar No. 775084
600 Richard B. Russell Building
75 Spring Street SW
Atlanta, Georgia 30303
Office: (404) 581-6000
FAX: (404) 581-6181

7

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to the following attorney(s) of record:

Page Pate

This 15th day of December, 2014.

*/s/ Brock Brockington*
C. BROCK BROCKINGTON
Assistant United States Attorney