IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

OSCAR JAMESON STOKES, M.D.

CRIMINAL ACTION FILE NO.

1:14-CR-290-TWT-JKL-1

## NON-FINAL REPORT AND RECOMMENDATION

Pending before the Court is Defendant Oscar Jameson Stokes, M.D.'s Motion to Release Seized Funds, or in the Alternative, For a Hearing to Determine Whether Seized Funds Are Tainted, [Doc. 135], and his Supplemental Motion to Release Seized Funds, or in the Alternative, For a Hearing to Determine Whether Seized Funds Are Tainted, [Doc. 145].

In these motions, Oscar Stokes seeks the immediate release of funds that the government seized pursuant to two seizure warrants. He principally argues that the government did not follow the proper procedural steps to seize the funds and, thus, is not in lawful possession of the funds. In the alternative, he requests an evidentiary hearing to determine whether the seized funds are traceable to the offenses charged in the indictment and the immediate release of any funds that are

found to be untainted.  The government opposes the release of any funds and the request for an evidentiary hearing.

For the following reasons it is **RECOMMENDED** that the motions be **DENIED**.

## I.      Background

On August 6, 2014, a federal grand jury returned an indictment against Oscar Stokes charging him with conspiracy to distribute, outside the usual course of professional medical practice and for no legitimate medical purpose, controlled substances at his pain clinic, Innovative Pain Management Clinic (the "Clinic"), as well as with substantive distribution counts.  [*See* Doc. 1.]  The indictment contained a forfeiture provision, which sought forfeiture of all property constituting proceeds of the alleged illegal activity and property used to facilitate the commission of the violations.  [*Id.* at 9-11.]

Also on August 6, 2014, DEA agents obtained a seizure warrant from Magistrate Judge Gerrilyn G. Brill for four Bank of America accounts in the name of the Clinic pursuant to 21 U.S.C. § 881(a)(6).  [*See* Doc. 135-1.]  Two days later, on August 8, DEA agents obtained a second seizure warrant for additional accounts at Wells Fargo in the name of the Clinic, also pursuant to 21 U.S.C. § 881(a)(6). [*See* Doc. 135-2.]  In total, the government seized $2,396,508.50 from four Bank

of America accounts and one Wells Fargo bank account (together, the seized funds are referred to as the "Bank Account Funds").  [*See* Doc. 135 at 2-3.]

On September 29, 2014, the government filed a Bill of Particulars specifying properties subject to forfeiture under the forfeiture provision of the indictment, including the Bank Account Funds.  [*See* Doc. 29.]  Also on September 29, 2014, the government initiated a civil forfeiture proceeding against the Bank Account Funds as well as other assets.  (*See United States v. $1,875,976.65 in Funds Seized from Bank of Am. Account No. XXXXXXXX6010, et al.*, No. 1:14-cv-3120-WSD ("Forfeiture Action"), Doc. 1.)  On December 14, 2014, the government, Oscar Stokes, the Clinic, and Tashawna Stokes, M.D. (Oscar Stokes's wife) filed a joint motion to stay the civil forfeiture case pending resolution of the criminal case. [Forfeiture Action, Doc. 27.]  On December 16, Judge William S. Duffey, Jr., the district judge presiding over the Forfeiture Action, granted the motion to stay the case pending resolution of this criminal case.  [*See* Forfeiture Action Doc. 28.]

On July 7, 2015, a grand jury returned a superseding indictment, adding Oscar Stokes' wife, Tashawna Stokes, as a co-defendant in the present case.  The superseding indictment charges both defendants with conspiracy to distribute and dispense controlled substances in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841,

maintaining a place for drug distribution, illegal distribution of controlled substances, and money laundering of the proceeds of the distribution scheme. [*See* Doc. 55.] The superseding indictment contains a forfeiture provision that specifically identifies the Bank Account Funds, among other property, as subject to forfeiture. [*Id.* at 17.]

On December 19, 2016, Judge Duffey administratively closed the civil forfeiture case pending resolution of the criminal proceedings against the Stokes. [*See* Forfeiture Action Doc. 36.]

On July 24, 2017, Oscar Stokes filed his instant motion for the release of the Bank Account Funds, or alternatively, for a hearing to determine whether the funds are tainted. [Doc. 135.] The government responded to that motion. [Doc. 139.] Oscar Stokes has filed a reply. [Doc. 141.]

On August 23, 2017, I held a status conference concerning the motion. Oscar Stokes was granted an additional thirty (30) days to supplement his motion to make a prima facie showing for a traceability hearing. [Doc. 142.] On September 21, 2017, Oscar Stokes filed a supplemental motion in which he conceded that he could not, at this time, make a showing that he needs the restrained funds for his defense

4

in this case; however, he reiterated his position that no such prima facie showing is required and, thus, stands on his request for a hearing.  [Doc. 145.]

## II.    Discussion

### A.    Arguments of the Parties

Oscar Stokes first argues that the government is not in lawful possession of the Bank Account Funds because the government never applied for or obtained a protective order or criminal seizure warrant restraining the seized funds and because the civil forfeiture proceeding has been "administratively closed and terminated."   [Doc. 135 at 6-8.]   Oscar Stokes alternatively argues that if, notwithstanding the administrative closure of the Forfeiture Action, the two seizure warrants are still in force, the Court should hold a hearing to determine traceability of the assets to determine the extent to which assets may be untainted.  [Doc. 8-14.]

The government responds that it is in lawful possession of the Bank Account Funds because the government filed a civil forfeiture complaint against the funds, and under the applicable criminal forfeiture statute, it is not required to obtain a protective order or seizure warrant.  [Doc. 139 at 6-7.] The government also argues that the court's order administratively closing the Forfeiture Action merely stayed those proceedings and did not dismiss or otherwise terminate the civil action; thus, the civil action remains pending.  [*Id.* at 7-8.]

5

In response to Oscar Stokes's alterative request for an evidentiary hearing, the government argues that Stokes has not made a threshold showing that he is entitled to a hearing on traceability. [Doc. 139 at 8-18.] Specifically, the Government alleges that the seizure warrants and indictment establish probable cause to believe that the Bank Account Funds were involved in, traceable to, or the proceeds of the pending criminal charges. [Doc. 139 at 9-10.] Under Supreme Court precedent, the government maintains, directly forfeitable assets cannot be released for attorney fees. [*Id.* at 10.] The government additionally argues that Oscar Stokes has failed to show that he is unable to afford counsel of choice. [Doc. 139 at 10.] Oscar Stokes has not come forward with any evidence to make the threshold showing that he has no assets, other than the assets that are restrained, with which to retain private counsel and to provide for himself and his family. [*Id.* at 11.] The government also submits that that Oscar Stokes has had access to other assets and has apparently liquidated two parcels of real property in Alabama that that he and his wife owned. [*Id.* at 13-15.] In addition, the government asserts that he has not made a prima facie showing that there is reason to believe that the grand jury erred in determining that the restrained assets constitute or are derived from proceeds traceable to the offenses alleged in the superseding indictment. [*Id.*]

Finally, the government argues that even if a hearing were necessary, Oscar Stokes cannot meet his burden to show that the Bank Account Funds were not involved in the charged crimes.  [Doc. 139 at 18-26.]

**B.     Analysis**

**1.     The Government is Lawfully in Possession of the Seized Assets Because the Bank Account Funds Are the Subject of a Parallel Civil Forfeiture Action.**

The seizure warrants authorized the seizure of the Bank Account Funds pursuant to 21 U.S.C. § 881(a)(6) for violations of 21 U.S.C. §§ 841 and 846. Section 881(a)(6) provides that "[t]he following shall be subject to forfeiture":

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of [Subchapter I of Chapter 13 of Title 21, United States Code], all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of th[at] subchapter.

As discussed above, Oscar Stokes has been charged with violating 21 U.S.C. §§ 841 and 846; thus, there is no legitimate dispute that the funds were properly seized in August 2014 pursuant to the warrants.

Once in possession of the funds, the government had ninety days to either file a civil forfeiture complaint against the seized property or return the property pending the filing of a complaint.  18 U.S.C. § 983(a)(3)(A).  This deadline is

important.  If the government either (i) did not file a complaint for forfeiture or return the property within that ninety-day period, or (ii) did not within ninety days obtain a criminal indictment that contains allegations that the property is subject to forfeiture and take steps necessary to preserve the government's right to maintain custody under the applicable criminal forfeiture statute; the government would have had to return the property and could not take any further action to effect the civil forfeiture of the property.  18 U.S.C. § 983(a)(3)(B).

But here, the government filed a civil forfeiture action against the Bank Account Funds on September 29, 2014, well within the ninety-day statutory period. [*See* Forfeiture Action, Doc. 1.]  Under the plain language of the statute, the government was required to take no further action to maintain custody of the seized assets.  *See* 18 U.S.C. § 983(a)(3)(C) (authorizing parallel civil forfeiture proceedings where the government has included a forfeiture allegation in a criminal indictment).

Oscar Stokes's argument that the Forfeiture Action has been "closed and terminated" is not entirely accurate, for the reasons explained in the government's response brief.  The Forfeiture Action was administratively closed, which is tantamount to a stay of a pending case.  The case was not "terminated."  To the

contrary, in all relevant ways, the case remains pending, just not for reporting purposes. *See NCI Grp., Inc. v. Cannon Servs., Inc.*, No. 1:09-cv-0441-BBM, 2010 WL 11509222, at *2 (N.D. Ga. Feb. 1, 2010) (Carnes, C.J.) (describing purpose and effect of administratively closing a case and explaining that "an administrative termination is intended for the internal use of the Court and is akin to a bookkeeping entry and a place keeper for the case until it is appropriate to reactivate litigation"). Accordingly, Oscar Stokes's contention that the Forfeiture Action is terminated and no longer pending is without merit.

For the foregoing reasons, the Court concludes that the government is in lawful possession of the Bank Account Funds by virtue of the timely filed parallel civil forfeiture action.

### 2. Oscar Stokes Is Not Entitled to an Evidentiary Hearing Regarding the Traceability of Funds Because He Has Not Made a Prima Facie Showing of Need.

The Supreme Court has held that it is constitutionally permissible for the government to freeze assets pending trial where there is probable cause to believe that the property is forfeitable. *United States v. Mansanto*, 491 U.S. 600, 615 (1989). That determination consists of two parts: whether there is probable cause to believe that (1) the defendant has committed an offense permitting forfeiture and (2) the property subject to pretrial restraint has the requisite connection to the

9

offense.  *Kaley v. United States*, 134 S. Ct. 1090, 1095 (2014) (citing 21 U.S.C. §

853(a)).Oscar Stokes does not contest, for purposes of his pending motions, that

there is probable cause to believe that he committed an offense permitting

forfeiture.[1]  Instead, he contends that he is entitled to a hearing so that this Court

can determine whether probable cause exists to believe that there is a nexus

between the charged offenses and the seized assets.

A defendant is not entitled to a hearing as a matter of right and must, instead,

make a threshold showing that the restraint infringes on his constitutional right to

due process.  In the context of criminal cases, due process concerns are most

frequently triggered when the defendant contends that the government has seized

untainted assets and that the defendant needs those assets to pay for counsel of his

choice.  *See, e.g., United States v. Farmer*, 274 F.3d 800, 803-05 (4th Cir. 2001);

*United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998); *accord United States v.*

*Cosme*, 796 F.3d 226, 233 (2d Cir. 2015) ("[B]efore a court will grant a *Monsanto*

---

[1] Oscar Stokes is correct to not challenge this determination.  In *Kaley*, the Supreme Court held that defendants were not constitutionally entitled to a "judicial re-determination" of a grand jury's conclusion that probable cause supports a criminal prosecution.  134 S. Ct. at 1097.  Here, a grand jury has found probable cause to believe that Oscar Stokes has committed the offenses charged, as evidenced by the indictments returned in this case, and there is no legitimate basis to dispute that the alleged offenses can trigger forfeiture.

hearing, it demands a 'threshold showing' of insufficient assets to fund counsel of choice . . . such that the hearing arises exclusively to vindicate Sixth Amendment rights.") (citing *United States v. Bonventre*, 720 F.3d 126, 131 (2d Cir. 2013)); *United States v. Jamieson*, 427 F.3d 394, 406 (6th Cir. 2005) (agreeing that a defendant has a right to a hearing on traceability only where the defendant can make the threshold showing that he has no assets); *United States v. Hernandez-Gonzalez*, No. 16-20669-CR, 2017 WL 2954676, at *7 (S.D. Fla. June 26, 2017) ("[I]t is settled law that a defendant must show a bona fide need to utilize seized assets to conduct his defense in order to be entitled to a hearing." (citations, alterations, and quotation marks omitted)), *report and recommendation adopted*, 2017 WL 3446815 (S.D. Fla. Aug. 10, 2017).  The Supreme Court has similarly acknowledged that that since *Monsanto*:

> [L]ower courts have generally provided a hearing to any indicted defendant seeking to lift an asset restraint to pay for a lawyer.  In that hearing they have uniformly allowed the defendant to litigate . . . whether probable cause exists to believe that the assets in dispute are traceable or otherwise sufficiently related to the crime charged in the indictment.

*Kaley*, 134 S. Ct. at 1095.

Citing *United States v. Kaley*, 579 F.3d 1246 (11th Cir. 2009) ("*Kaley I*") and *United States v. Bissell*, 866 F.2d 1343 (11th Cir. 1989), the government

contends that it is settled law in this Circuit that a defendant is entitled to a hearing only where the defendant can show a bona fide need to use the funds to obtain counsel.  [Doc. 139 at 11.]  The Court is not entirely convinced that *Kaley I* and *Bissell* hold that **only** a defendant who makes a preliminary showing that he cannot afford the counsel of his choice is entitled to a post-indictment hearing.  After all, in both of those cases, the defendants were asserting that they were prevented from retaining their counsel of choice, so the Eleventh Circuit had no occasion to ask whether a defendant can make a sufficient showing by demonstrating some other bona fide need.  Nonetheless, the weight of authority recognizes a defendant will not be entitled such a hearing just because he asks for it—he must instead demonstrate that it there is a true necessity that he have access to the restrained assets.

Here, Oscar Stokes has not made a showing that a hearing is necessary, and, in fact, concedes that he could not make such a showing that would satisfy the Court at this time.  Nonetheless, citing *Luis v. United States*, 136 S. Ct. 1083 (2016), he contends that the Court should still conduct a hearing.  [Doc. 145 at 2.]  The Court disagrees.   In *Luis*, the issue before the Supreme Court was the constitutionality of the government's pre-conviction seizure of untainted assets that

12

essentially left the defendant destitute and unable to afford counsel of her own choice. *Luis*, 136 S. Ct. at 1093 (explaining that the "legal conflict arises" because the defendant need some portion of the frozen funds to pay for the lawyer of her choice). *Luis* does not recognize that a defendant has a right to a traceability hearing as a matter of right absent some showing of need that would trigger due process concerns. In fact, *Luis* does not speak to what showing a defendant must make because there was no dispute that the frozen assets were untainted. *Luis*, therefore, does not change the general rule that to be entitled to a hearing to determine whether seized assets are tainted, the defendant must make a prima facie showing of substantial financial need for those assets.

In sum, the Court concludes that Oscar Stokes has not shown that an evidentiary hearing is warranted to determine whether probable cause exists to believe that the Bank Account Funds can be traced to the offenses alleged in the indictment. Accordingly, Oscar Stokes' motion and supplemental motion should be denied.

## III.   Conclusion

For the foregoing reasons, it is **RECOMMENDED** that Defendant Oscar Jameson Stokes's Motion to Release Seized Funds, or in the Alternative, For a Hearing to Determine Whether Seized Funds Are Tainted [Doc. 135] and his

13

Supplemental Motion to Release Seized Funds, or in the Alternative, For a Hearing

to Determine Whether Seized Funds Are Tainted [Doc. 145] be **DENIED**.

IT IS SO RECOMMENDED this 23rd day of October, 2017.

_____
JOHN K. LARKINS III
United States Magistrate Judge